IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CARLOS APPLEBY,  §  | | |
|     Plaintiff;  § | | |
| § | | |
| v.  § | | Civil Action No. 3:17-CV-673 |
| § | | |
| HOME DEPOT U.S.A., INC. D/B/A  § | | |
| HOME DEPOT  § | | |
|     Defendant.  § | | |

**HOME DEPOT U.S.A., INC.'S BRIEF IN SUPPORT OF ITS FIRST AMENDED
DAUBERT MOTION TO EXCLUDE TESTIMONY OF PLAINTIFF'S EXPERT
EDMOND PROVDER**

Defendant Home Depot U.S.A., Inc. d/b/a Home Depot ("The Home Depot" or "Defendant"), asks the Court to exclude the testimony of Edmond Provder, Plaintiff's expert witness, for failure to meet the requirements for admissibility under Federal Rule of Evidence 702 and the qualifications outlined in *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 590-91 (1993) .

**I. Factual Background and Stage of Proceeding**

1.  Plaintiff Carlos Appleby ("Plaintiff" or "Appleby") brought suit against Defendant claiming it was negligent in failing to provide Appleby with a reasonably safe work environment among other allegations.  First Amend. Compl. ¶ 16 [Doc. 37-1].

2.  The discovery period in this matter ends on May 1, 2019.  Trial is currently set for the Court's four week docket beginning August 5, 2019.

3.   This is a non-subscriber work injury case in which Plaintiff alleges that on September 25, 2015 he was injured when a forklift operated by a co-worker injured his feet.  *Id*. at ¶ 7 – 11.

Defendant's Brief in Support of its Motion to Exclude      Page 1 of 11
Testimony of Plaintiff's Expert Edmond Provder
12120.10

4. On August 6, 2018 Plaintiff identified Edmond Provder ("Provder") as his expert witness in its expert disclosures.

5. Provder is a rehabilitation counselor Appleby has designated to provide expert testimony as to Appleby's employability, potential earning capacity, and potential for rehabilitation. *See* Provder Report, Exhibit A, App. at 1.

6. According to his report, Provder evaluated Appleby via video conferencing on July 23, 2018 and conducted various analyses based on that evaluation and a review of other records. Ex. A, App. at 1, 4.

7. Based on this analysis Provder ultimately opines that Appleby has a diminished future earning capacity based on alleged physical limitations due to the incident made the basis of this suit, which is contrary to the opinions of the multiple physicians who actually treated him and have determined otherwise.

## II. Argument

8. For an expert witness's opinions to be admissible, the expert must be qualified and his opinions must be reliable. *See Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000); *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 590-91 (1993). In *Daubert*, the Supreme Court set out a list of factors to be considered in determining whether scientific expert testimony should be admitted. *See Daubert*, 509 U.S. at 593-95. While the Court qualified that this was not a "definitive checklist," the factors identified include: (1) whether the theory or technique has been or can be tested; (2) whether the theory has been subject to peer review; (3) whether there is a known rate of error and if so, whether it is acceptable; and (4) whether the theory is generally accepted in the relevant community. *Id*.

Defendant's Brief in Support of its Motion to Exclude
Testimony of Plaintiff's Expert Edmond Provder
12120.10

Page 2 of 11

9. In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999), the Supreme Court recognized that a court's gatekeeping function extends beyond only scientific evidence to all expert testimony. The *Daubert* factors are flexible and a court's determination of whether an expert's testimony is reliable must be tied to the facts of the case. *Id*. at 138. Incorporating these points from *Daubert*, *Kumho Tire*, and several other cases, the notes from the advisory committee on Federal Rule of Evidence 702 identify additional factors that may be considered in determining whether a proposed expert witness's testimony is appropriate. Those factors include:

> (1) Whether the experts are proposing to testify about matters growing naturally and directly out of research they have conducted … or whether they have developed their opinions expressly for purposes of testifying.
>
> (2) Whether the expert unjustifiably extrapolated from an accepted premise to an unfounded conclusion . . . .
>
> (3) Whether the expert has adequately accounted for obvious alternative explanations . . . .
>
> (4) Whether the expert 'is being as careful as he would be in his regular professional work outside his paid litigation consulting . . . [and]
>
> (5) Whether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert would give . . . .

Fed. R. Evid. 702 advisory committee's note (2000 amends)(internal quotations and citations omitted). "The objective of [the Court's gatekeeping function] is to ensure the reliability and relevancy of expert testimony" and "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152.

Defendant's Brief in Support of its Motion to Exclude
Testimony of Plaintiff's Expert Edmond Provder
12120.10

Page 3 of 11

10. Provder's testimony should be excluded because it fails to meet the criteria for admissibility established by Rule 702. His opinions as to Appleby's future employability are not reliable as they unjustifiably extrapolate from medical diagnoses to a unfounded conclusions regarding Plaintiff's abilities without explanation, and further are entirely speculative, which is not permitted under the *Daubert* standards.

**A.     Provder's Testimony Is Not Reliable**

11. Although Provder purports to have reviewed certain of Appleby's medical records, he acknowledged in his deposition that his opinions regarding Plaintiff's physical limitations are based *solely* upon the representations Plaintiff made during his virtual interview. *See* Provder Dep., Exhibit B, App. at 34. Accordingly, the Report is based on insufficient facts and data and is unreliable. *See* Fed. R. Evid. 702(b); *U.S. v. Coutentos*, 651 F.3d 809, 820 (8th Cir. 2011).

12. "An expert's opinion must be supported to provide substantial evidence; 'we look to the basis of the expert's opinion, and not the bare opinion alone.'" *Guile v. U.S.*, 422 F.3d 221, 227 (5th Cir. 2005)(quoting *Archer v. Warren*, 118 S.W.3d 779, 782 (Tex.App.–Amarillo 2003)). "If an opinion is fundamentally unsupported, then it offers no expert assistance to the jury. Furthermore, its lack of reliable support may render it more prejudicial than probative, making it inadmissible under Fed.R.Evid. 403." *Viterbo v. Dow Chem. Co*., 826 F.2d 420, 422 (5th Cir.1987).

13. Provder reviewed Plaintiff's medical records, and acknowledges that despite his findings to the contrary, none of those records stated that Appleby required any work restrictions, would have permanent physical disabilities, or indicated that Plaintiff could not enjoy a full recovery from his injuries. Ex. B, App. at 30-31, 38. Provder admits that the permanence of

Defendant's Brief in Support of its Motion to Exclude                                    Page 4 of 11
Testimony of Plaintiff's Expert Edmond Provder
12120.10

Plaintiff's limitations is "an assumption that [he] made" based purely on his review of these records, which inexplicably contain no such statements, and his subjective interview of Plaintiff. Ex. B, App. at 31.

14.  Provder is not a medical doctor, and admits that in performing his function as a rehabilitation counselor he must rely on the medical information provided to him to determine the extent of a subject's injuries or abilities as those records form the foundation of his own analysis. Ex. B, App. at 31-32. Despite this acknowledgment, Provder ignores the opinions of Appleby's medical providers, some of whom treated him personally over a span of twelve months, and comes to a contradictory conclusion based solely on his single video interview with Appleby that lasted only a couple hours.

15.  In his Report, Provder identifies the four sets of medical records he reviewed as those from Dallas Regional Medical Center, Parkland Health & Hospital System, Dr. Straus, and the Parkland-Ortho Clinic. *See* Ex. A, App. at 10. Despite his own acknowledgment that the opinions of these medical providers provide the foundation for his own analysis, for each set of records, Provder includes only a short excerpt from the provider's statements. *See Id.*

16.  For instance, Provder notes that he reviewed medical records from the Parkland-Ortho Clinic for October 7, 2015 through April 20, 2016, and notes only that those records state that Plaintiff has a "[c]losed fracture of the metatarsal bone of left foot. Closed nondisplaced fracture of lateral malleolus of right fibula with routine healing. Left foot pain." Ex. A, App. at 10. While this is an accurate description of the problems Plaintiff presented with to the provider, it is not a complete picture of the provider's assessment.

17.  Plaintiff continued to treat at Parkland, but for reasons that are not clear Provder did not review additional records regarding those follow up visits. Following the last visit

Defendant's Brief in Support of its Motion to Exclude         Page 5 of 11
Testimony of Plaintiff's Expert Edmond Provder
12120.10

Provder reviewed dated April 20, 2016, Plaintiff was treated again at Parkland on October 19, 2016, approximately thirteen months after the underlying incident occurred. *See* Parkland Health & Hospital System Record, Exhibit C (filed separately under seal to protect patient privacy in accordance with HIPAA).

18.     At the October 19, 2016 visit, Appleby's medical provider Dr. David Brad Minor, documented that Appleby was "doing well overall" and only "occasionally feels a little twinge of pain when doing strenuous activity but overall doing well. No major issues." Ex. C at 2. Most notably, he did not provide any work-related restrictions to Appleby's work duties based on his purported physical limitations. In fact, Dr. Minor advised Appleby to return to normal activity as tolerated and return for follow up in one year unless asymptomatic. Ex. C at 3.

19.     Additionally, Provder reviewed the report of Dr. Brian E. Straus, who treated Plaintiff on January 15, 2018. *See* Ex. A, App. at 10. From that report, Provder quotes only that it states "Crushing injury of left foot…He seems to be having residual neurogenic pain from the crush injury 2 years ago. This does not seem to be a full-blown regional pain syndrome, however." *Id*.

20.     This limited excerpt from the records provides only an incomplete, if not wholly misleading, picture of Dr. Straus's evaluation of Plaintiff's condition. For instance, Dr. Straus specifically states in this record reviewed by Provder that there are "no specific work or activity restrictions from [his] standpoint." *See* Ex. B, App. at 36 (Provder agreeing that the record from his working file contains this statement).

21.     When asked about this statement in his deposition, Provder acknowledged Dr. Straus's opinion that no work restrictions were needed, and further admits that the Plaintiff was actually working at that time for Speed Commerce. Ex. B, App. at 35-37. In fact, Provder

Defendant's Brief in Support of its Motion to Exclude                    Page 6 of 11
Testimony of Plaintiff's Expert Edmond Provder
12120.10

openly acknowledged that Dr. Straus, a board-certified orthopedic surgeon, would have been well within his rights to make a recommendation for work restrictions if needed, and "it's actually preferable that we [rehabilitation counselors] know from an examination what the doctor's, physician's, assessment [is] as to the person's functional capacity and their limitations, if any." Ex. B, App. at 37-38.

22. Given Provder's own indications that a physician's opinions as to Appleby's functional capacity would be important information in his own analysis, his failure to acknowledge Dr. Straus's clear opinion that the Plaintiff could work without restrictions severely undercuts Provder's testimony.

23. Whether Provder merely failed to consider the later records from Parkland or the statements from Dr. Straus or intentionally ignored this evidence in favor of information that better suited his opinion, the omissions render his testimony unreliable. Because Provder himself acknowledged the significance of medical reports to his own analysis, the fact that he has failed to consider the most recent and relevant medical information fatally undermines his opinion.

24. Dr. Straus, acknowledged in his own deposition after reviewing the October 19, 2016 Parkland record, that typically one would expect pain levels from an injury such as Appleby's to have plateaued by the thirteen month mark. *See* Exhibit D, App. at 44-47. Ultimately, Dr. Straus concluded in his deposition that Appleby's complaints of increased pain several months after the Parkland examination could indicate that another factor is present, such as "secondary gain," which he explains is when someone exaggerates a medical complaint for some other reasons—frequently financial gain. Ex. D, App. at 47-48.

Defendant's Brief in Support of its Motion to Exclude   Page 7 of 11
Testimony of Plaintiff's Expert Edmond Provder
12120.10

25.     Accordingly, in addition to demonstrating the lack of factual basis for his opinions, Provder's failure to consider all the relevant medical information also caused him to fail to consider alternate explanations for Plaintiff's complaints, such as secondary gain.

26.     Ultimately, Provder is not a medical expert, and he has acknowledged that because he does not have medical training he has to rely on the reports of medical professionals who have actually treated the Plaintiff to assist him in rendering his own opinion. His failure to properly consider all of the relevant records of the medical providers who actually examined the Plaintiff and evaluated his injuries in person indicates that he sought only to rely on information that supported his preferred outcome. This is an insufficient basis for an expert opinion, and therefore Provder's testimony is unreliable.

27.     Provder cannot reliably opine that Appleby has suffered a lifelong loss of employability and earning capacity because he has not properly considered the available evidence, which has in turn rendered him unable to consider alternative explanations for Plaintiff's complaints. Any such testimony in the absence of the true picture of Appleby's medical condition would be of no assistance to the jury. The lack of reliable support for Provder's opinions may render them more prejudicial than probative, making them inadmissible under Fed.R.Evid. 403." *Viterbo*, 826 F.2d at 422. As such, Provder's testimony should be excluded from the trial of this matter.

**B. Provder's Testimony is Purely Speculative**

28.     To be reliable, an expert witness's opinions must be "based on sufficient facts or data." Fed. R. Evid. 702(b). If the testimony fails in this respect, and is instead merely speculative in nature, it can and should be excluded. *See e.g., Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 143-44 (1997)(overturning 11th Circuit and finding that district court's rejection of expert's

Defendant's Brief in Support of its Motion to Exclude                                                      Page 8 of 11
Testimony of Plaintiff's Expert Edmond Provder
12120.10

reliance on far-removed animal studies to support its conclusion was appropriate as opinions based on such studies were speculative).

29. Provder, as a vocational rehabilitation counselor must base his opinions regarding the Plaintiff's lost earning capacity on appropriate facts or data, but he fails entirely on this point and instead offers speculative numbers based on pure conjecture.

30. In his report, Provder notes that Plaintiff was earning $10 per hour when employed at The Home Depot. Ex. A, App. at 10. Assuming Plaintiff had worked 40 hours per week for a full year that would give him an annual income of approximately $20,000. Provder also notes that in 2017, more than a year after the alleged injury at issue in this case, Plaintiff had income of $19,376. *Id*. From November 2016 through March 2018 Plaintiff worked as a packer and manifester earning $11.50 an hour--$1.50 more per hour than he earned prior to the incident at issue in this case. *Id*. at 15.

31. Despite the clear evidence of Plaintiff's actual earning capacity both before and after the underlying incident, which showed he was earning $10 to $11.50 per hour, Provder somehow concludes that Plaintiff's pre-injury earning capacity would have been $51,912 per year. *Id*. at 27. This is more than double his actual earnings in any given year pre-injury.

32. Provder contends this $51,912 figure is based on "the average earnings of a male with a high school education." *Id*. However, this is not a sufficient basis for his opinion where actual evidence exists of the Plaintiff's true earnings. Even if Provder's opinion is based on Plaintiff's desire to obtain a commercial driver's license, any conclusion that the Plaintiff would actually do so and then obtain higher paying employment is exceedingly speculative.

33. This precise type of speculation has been found to be grounds for excluding expert testimony. In *Chesapeake Operating, Inc. v. Hopel*, 2013 WL 5782916, at *6 (Tex.

Defendant's Brief in Support of its Motion to Exclude   Page 9 of 11
Testimony of Plaintiff's Expert Edmond Provder
12120.10

App.—Amarillo Oct. 24, 2013, no pet.), the court excluded a vocational rehabilitation expert's testimony on lost earning capacity because it was too speculative in assuming that the plaintiff would "probably" have gotten certain promotions and corresponding pay increases. The court stated specifically, that "[w]ithout credible proof of an expectation of a promotion and the consequent increase in salary, [the expert's] testimony was purely speculative." *Id*.

34. Similarly here there is no credible proof that Plaintiff could or would obtain a job paying anywhere in the realm of what Provder asserts was his "pre-injury earning capacity." The only credible evidence demonstrates that Plaintiff was earning a near equivalent amount post-injury doing similar work. *See* Ex. A, App. at 27. Therefore, to be reliable, any lost earning calculations should be based on his actual pre-injury earnings not some speculative hypothetical.

35. Because his opinions as to Plaintiff's lost earning capacity are based on unfounded speculation and not fact, they are unreliable and should be excluded pursuant to Rule 702 and *Daubert*.

### III. Conclusion

36. Mr. Provder's proposed testimony is unreliable because it is not supported by sufficient data and disregards significant records regarding Appleby's medical treatment. This failure in turn, prevented Provder from considering alternate explanations for Plaintiff's alleged symptoms. The proposed testimony is also based entirely on unfounded speculation and ignores factual evidence that contradicts the proffered opinions. For these reasons, Provder's testimony should not be considered in this matter. Oral argument is requested.

37. To the extent Provder supplements his opinions in this matter, whether by virtue of deposition testimony or an amended report, The Home Depot reserves the right to amend its Motion to Exclude in consideration of any newly proffered conclusions.

Defendant's Brief in Support of its Motion to Exclude    Page 10 of 11
Testimony of Plaintiff's Expert Edmond Provder
12120.10

Respectfully submitted,

MULLIN HOARD & BROWN, L.L.P.
Chad L. Farrar, SBN 00793716
C. Brett Stecklein, SBN 00794688
Katie Harrison, SBN 24062767
Flannery Nardone, SBN 24083183
2515 McKinney Ave., Suite 900
Dallas, Texas 75201
Telephone:    (214) 754-0040
Facsimile:    (214) 754-0043
cfarrar@mhba.com
bstecklein@mhba.com
kharrison@mhba.com
fnardone@mhba.com

/s/ Chad L. Farrar
By: Chad L. Farrar

***Attorneys for Defendant Home Depot U.S.A., Inc.***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this the 26th day of November, 2019, a true and correct copy of the foregoing was served by ECF addressed to:

**Via E-Filing**
Wesley H.M. Gould
Rochelle McCullough, L.L.P.
325 N. St. Paul Street, Suite 4500
Dallas, Texas 75201
wgould@romclawyers.com

/s/ Chad L. Farrar
Chad L. Farrar

Defendant's Brief in Support of its Motion to Exclude
Testimony of Plaintiff's Expert Edmond Provder
12120.10

Page 11 of 11